**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| ANGEL CRUZ, | : | |
|  | : | Civ. Action No. 17-6261(RMB) |
| Petitioner | : | |
|  | : | |
| v. | : | **OPINION** |
|  | : | |
| WARDEN DAVID ORTIZ, | : | |
|  | : | |
| Respondent | : | |

**BUMB**, District Judge

On August 18, 2017, Petitioner Angel Cruz ("Cruz"), a prisoner confined in the Federal Correctional Institution in Fort Dix, New Jersey ("FCI Fort Dix"), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Pet., ECF No. 1.) On November 20, 2017, Respondent filed Respondent's Answer to Petition For a Writ of Habeas Corpus. (Answer, ECF No. 3.) For the reasons discussed below, the Court denies the petition.

I. BACKGROUND

On February 11, 2016, at FCI Fort Dix, Cruz was cited for violation of Code 108, possession or introduction of a hazardous tool, hacksaw, blade, body armor, maps, handmade rope, or other

escape paraphernalia. (Pet., ECF No. 1-4 at 1.) Correctional Officer M. Boze wrote the incident reported and stated:

> On February 11, 2016, at approximately 11:20 A.M. I, Officer M. Boze, acting as the East Compound Officer #2, conducted a search of room 219 in Housing Unit 5752-F in conjunction with East SIS Lieutenant Miosi. When we entered the room I observed inmate Cruz, Angel, register number 70613-067, attempt to conceal a rectangular black object resembling a phone by sliding it underneath a pillow laying on the lower bed of bunk 4. I ordered all inmates present to submit to a pat search and to leave the room. While I/M Cruz was being searched and until he left the room, I discerned that his eyes repeatedly returned to the lower bed of bunk 4. I/M Cruz's allotted bed assignment is room 219, 4-lower. When I searched the area I immediately recovered one (1) Black LG Mobile Cellular Smart Phone with attached charger underneath the pillow lying on the lower bed of bunk 4, the same location that I had observed I/M Cruz place an object when we entered the room and the bed to which he is assigned. I notified the East Operations Lieutenant.

(Answer, Declaration of Tara Moran ("Moran Decl."), Ex. 5, ECF No. 3-3 at 18.) Upon receipt of the incident report, Cruz was advised of his right to remain silent during the disciplinary process and informed that his silence could be used to draw an adverse inference against him. (Id. at 19.) Cruz stated that he had "no comment." (Id.) He did not request a staff representative or ask to call any witnesses. (Id.) At the conclusion of the investigation, the investigating lieutenant referred the incident

2

report to the unit discipline committee ("UDC") for an initial hearing. (Answer, Moran Decl., Ex. 5, ECF No. 3-3 at 19.)

On February 16, 2016, Cruz was advised of his right to appear at the UDC hearing and chose to waive his appearance. (Id., Ex. 6, ECF No. 3-3 at 22.) Cruz also received a "Notice of Discipline Hearing Before the DHO," informing him that his case would be referred to a DHO. (Id., Ex. 8, ECF No. 3-3 at 26.) Cruz indicated on this form that he did not want to have a staff representative or call any witnesses. (Id.) Cruz also signed an "Inmate Rights at Discipline Hearing" form, acknowledging that staff had advised him of his rights in connection with the disciplinary hearing. (Id., Ex. 7, ECF No. 3-3 at 24.)

The disciplinary hearing was held on February 25, 2016. (Id., Ex. 9, ECF No. 3-3 at 28-30.) Cruz made the statement that "he was talking with family." (Id., Section III.B.) In finding Cruz guilty, the DHO considered Cruz's statement that he was talking with family, Officer Boze's description in the incident report of what he observed, the chain of custody, a photo of the cell phone, and "tobacco." (Id. at 29.) The DHO wrote, "[b]ased on the evidence I find that you violated prohibited acts of Code 108, Possession of a Hazardous Tool, and Code 331 Possession of Non-Hazardous contraband. (Id., Section V.) However, the DHO's report also indicates that Cruz was charged only with violating Offense Code 108. (Id. at 28.) The attachments to the DHO report did not include

anything about tobacco, nonhazardous contraband. (Answer, Moran Decl., Ex.9, ECF No. 3-3 at 31-33.)

The DHO imposed the following sanctions for violation of Code 108: (1) disallowance of 41 days of good conduct time; (2) 15 days of disciplinary segregation; (3) restriction of commissary and visiting privileges for 90 days; (4) restriction of email and telephone privileges for 18 months; and (5) a $500.00 monetary fine. (Id. at 29, Section VI.) The DHO explained that he imposed these sanctions because an inmate who possesses a hazardous tool in a correctional institution threatens the safety and security of not only the inmate involved, but that of the entire institution. (Id., Section VII.) Cellphones are hazardous tools because they can be used to arrange escapes, arrange contraband instructions, and allow inmates contact outside the institution without knowledge of staff, possibly for illegal activities. (Id.)

Cruz appealed the decision of the DHO to the BOP's Northeast Regional Office on or about May 3, 2016. (Moran Decl., Ex. 2, ECF No. 3-3 at 6-7.) He challenged the accuracy of the DHO report based on its reference to Code 331 and possession of tobacco because he was not charged under this Code. (Id. at 6.) He denied making the statement "I was talking with my family" at the DHO hearing. (Id. at 7.) Finally, he challenged the sufficiency of the evidence against him, and complained about the severity of the fine. (Id.)

On June 2, 2016, the Regional Director remanded to the DHO for further review and rehearing. (Moran Decl., Ex. 2, ECF No. 3-3 at 8.) At the DHO rehearing on February 10, 2017, Cruz asked to call inmate Eric Bradley as a witness. (Moran Decl., Ex. 10, ECF No. 3-3 at 35-37.) Bradley testified that on February 11, 2016, around 11:20 a.m., he got up to go to the laundry. (Id. at 35, Section III.C.2.) However, officers arrived to pat search everyone, and directed Cruz to stay where he was. (Id.) The officers sent the inmates out [of the cell] but did not check their laundry bag[s]. (Id.) Cruz was taken to the SHU. (Id.)

Petitioner also made a statement at the rehearing. The DHO Hearing Report indicates that Cruz said he "was not near the bed and he was talking with another inmate when the officer came in. . . . [T]he officer[s] did come in and conduct a search, but they did not see him do anything." (Id., Section III.B.)

At the rehearing, the DHO considered the original incident report and the three items attached to the original incident report: 1) the chain of custody log dated February 11, 2016; 2) a photo sheet with one black and white photo of a cell phone, and 3) a February 11, 2016 memorandum submitted by Lt. J. Miosi. (Id. at 36, Section V.) In Miosi's memorandum, he reported that on February 11, 2016, he had information that Cruz was possibly in possession of a cell phone; that he proceeded to Cruz's cell with Officer Boze; that he observed Cruz place a cell phone under the pillow on

5

his assigned bed; that Officer Boze located a cell phone in the same location that Cruz was observed placing it; and that, as he escorted Cruz to the lieutenant's complex, Cruz admitted "to having the cell phone so that he could call his family" and that he paid $800 for the phone. (Moran Decl., Ex. 10, ECF No. 3-3 at 36, Section V.) Based upon all this evidence, the DHO concluded that Cruz committed the prohibited act of Code 108: possession of a hazardous tool. (Id.) The DHO imposed the same sanctions he had imposed following the first hearing. (Id., Section VI.)

On or about February 21, 2017, Cruz filed an appeal of the rehearing to the Regional Director. (Moran Decl., Ex. 3, ECF No. 3-3 at 10-11.) He again challenged the evidence relied upon by the DHO and claimed that the DHO report included errors. (Id.) On March 24, 2017, the Regional Director denied the appeal. (Id. at 12.)

Cruz appealed the Regional Director's decision to the BOP's Central Office. (Moran Decl., Ex. 4, ECF No. 3-3 at 14-15.) On August 28, 2017, the Central Office denied the appeal, finding that the DHO's determination was supported by the evidence, that Cruz received due process at the hearing, and the sanctions imposed were commensurate to the severity level of Cruz's offense. (Id. at 16.)

Petitioner asserts his loss of 41 days of good conduct time violated his right to due process, based on the same four grounds

he raised on appeal of the first DHO decision. (Pet's Mem., ECF No. 1-4 at 7-9.)

II. DISCUSSION

   A. Standard of Law

   28 U.S.C. § 2241 provides, in relevant part:

>    (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
>    (c) The writ of habeas corpus shall not extend to a prisoner unless—
>
>       . . .
>
>       (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

"Federal prisoners serving a term of imprisonment of more than one year have a statutory right to receive credit toward their sentence for good conduct." Denny v. Schultz, 708 F.3d 140, 143-44 (3d Cir. 2013) (citing 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20 (2008)). Based on this statutorily created right, "a prisoner has a constitutionally protected liberty interest in good time credit." Id. (quoting Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing Wolff v. McDonnell, 418 U.S. 539, 556–57 (1974)).

The Supreme Court defined the due process protections required where a prison disciplinary hearing may result in loss of good conduct time. The five due process protections in a prison disciplinary proceeding include: 1) the right to appear before an

7

impartial decision-making body; 2) twenty-four hour advance written notice of the charges; 3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; 4) assistance from an inmate representative, if the charged inmate is illiterate or complex issues are involved; and 5) a written decision by the fact-finder including the evidence relied on and the reason for the disciplinary action. Wolff, 418 U.S. at 546-71. Further, the DHO's decision must be supported by "some evidence." Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 455 (1985).

B. Analysis

1. Whether Cruz was prejudiced by the admission of evidence regarding tobacco products at the hearing, although he was not charged with possession of tobacco products

(Petr's Mem., ECF No. 1-4 at 7.) Respondent contends that even if the DHO improperly considered tobacco at the first hearing, any error was cured at the rehearing because the second DHO report makes clear that the DHO only considered evidence related to the cell phone. (Answer, ECF No. 3 at 23.) Respondent is correct. There is no mention of tobacco products in the DHO's hearing report from the rehearing on February 10, 2017. (Moran Decl., Ex. 10, ECF No. 3-3 at 35-37.)

> 2. Whether the DHO could consider Cruz's alleged statement that he was talking with his family [on the cell phone] where Cruz denied making this statement.

(Petr's Mem., ECF No. 1-4 at 8.)

Respondent contends that, at the rehearing, Cruz denied admitting at the first hearing that he used a cell phone to talk to his family. (Answer, ECF No. 3 at 18.) Therefore, he was not prejudiced at the rehearing. Respondent further asserts that even if Cruz is really challenging the statement from Lieutenant Miosi's memorandum (that on the day Cruz's cell was searched he admitted that he had the phone to call his family), hearsay statements are permitted in prison disciplinary hearings. (Id.)

Hearsay is permissible in a prison disciplinary proceeding. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Carter v. Lawler, 446 F. App'x 420, 423 (3d Cir. 2011) ("a decisionmaker may rely on hearsay evidence in a prison disciplinary proceeding.") Moreover, when an inmate challenges the sufficiency of the evidence supporting the decision of a disciplinary hearing officer, "the 'some evidence' standard does not require . . . independent assessment of the credibility of witnesses or weighing of the evidence." Speight v. Minor, 245 F. App'x 213, 216 (3d Cir. 2007) (per curiam) (quoting Hill, 472 U.S. at 455-56.) Cruz was not denied due process by the DHO's consideration of hearsay in Lieutenant Miosi's memorandum or the DHO's partial reliance on the hearsay statement. Cruz denied admitting he used a cell phone, but

the DHO credited Miosi's statement. This Court is not permitted to assess the credibility of witnesses or weigh evidence submitted at the DHO hearing.

> 3. Whether the evidence was sufficient to support the finding of guilt.

(Petr's Mem., ECF No. 1-4 at 8.) Cruz contends that if the DHO impermissibly relied on evidence of tobacco products being found and impermissibly relied on Cruz's alleged statement that he was talking to his family on the cell phone, then there was insufficient evidence to support the finding of guilt. (Id. at 8-9.)

Respondent argues that the "some evidence" standard is minimal and easily met here. (Answer, ECF No. 3 at 19.) At the rehearing, the DHO relied on Officer Boze's description of the incident in the incident report; a photo of the phone that was confiscated; a chain of custody log; and Miosi's memorandum describing what he observed on the day the cell phone was confiscated from Cruz's cell. (Id. at 19-20.)

The relevant question in testing whether the "some evidence" standard is met is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. As discussed above, hearsay evidence may support a DHO's finding of guilt. Additionally, an officer's statement in an incident report that he found a cell

phone in the inmate's assigned living area, coupled with a photograph of a cell phone the officer took in that area was sufficient to meet the "some evidence" standard. McGill v. Martinez, 348 F. App'x 718, 721 (3d Cir. 2009) (per curiam). Here, there was more evidence than in McGill because two officers described observing Cruz putting the cell phone under the pillow of his assigned bed, where the cell phone was ultimately found, and a photo of the cell phone was produced at the hearing. The "some evidence" standard was clearly met.

> 4. Whether the fine imposed was disproportionate to the offense and constitutes an abuse of discretion.

(Petr's Mem., ECF No. 1-4 at 9.) Cruz contends the DHO did not explain why he sanctioned him with a $500 fine, and such a fine is an abuse of discretion. (Id.) Respondent argues that this Court lacks jurisdiction over a claim challenging the monetary fine imposed as a prison disciplinary action because a fine does not affect the fact or duration of confinement. (Answer, ECF No. 3 at 22, n.6.)

Generally, the only prison disciplinary sanction that can be challenged in a habeas petition as a violation of due process is a sanction that affects the fact or length of confinement, such as loss of good conduct time. See Reynolds v. Williamson, 197 F. App'x 196, 199 (3d Cir. 2006) (citing Sandin v. Conner, 515 U.S. 472, 486 (1995); Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir.

2002); Leamer v. Fauver, 288 F.3d 532, 540-42 (3d Cir. 2002)). Even if the courts recognized a protected property interest associated with prison disciplinary hearings, Cruz received all of the procedural protections due in a prison disciplinary proceeding. Further, fines are permissible sanctions for violating Code 108, a greatest severity level prohibited act. See 28 C.F.R. § 541.3 (Table 1, E.) A $500 fine for possession of a cell phone in prison is not so disproportionate to the Code violation so as to violate a due process property right.

III. CONCLUSION

For the reasons discussed above, the Court denies Cruz's petition for a writ of habeas corpus under 28 U.S.C. § 2241. An appropriate Order follows.


Dated: June 11, 2018

                                      s/Renée Marie Bumb
                                      **Renée Marie Bumb**
                                      **United States District Judge**